IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jeffrey B. Youngren, | ) | Case No.: 8:12-cv-00485-MGL-JDA |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Warden Michael McCall, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 47.] Petitioner, proceeding pro se, is a state prisoner who seeks relief pursuant to 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on February 14, 2012.[1] [Doc. 1.] On August 3, 2012, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 47–53.] On August 6, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 55.] Petitioner filed a response in opposition on October 11, 2012. [Doc. 66.]

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on February 14, 2012. [Doc. 1-3 (envelope stamped as received by prison mailroom on February 14, 2012).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined at the Lee Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Dorchester County Clerk of Court.[2] [Doc. 1 at 1; Doc. 62 (notice of change of address to Lee Correctional Institution).] In April 1995, Petitioner was indicted for murder, pointing a firearm, and possession of a pistol by a person under the age of 21 years. [Doc. 50-15 at 28–36.[3]] On April 17, 1995, represented by John Loy ("Loy"), Petitioner proceeded to trial. [Doc. 48-1 at 3–Doc. 48-5 at 48.] On April 19, 1995, a jury reached a verdict of guilty on the murder and possession of a pistol charges and not guilty on the pointing a firearm charge. [Doc. 48-5 at 40.] Petitioner was sentenced to life imprisonment for murder and one year for the possession charge. [*Id.* at 45.]

---

[2] At the time he filed the Petition, Petitioner was confined at Perry Correctional Institution, where the warden is Respondent Michael McCall [Doc. 1 at 1], but on August 22, 2012, Petitioner filed a notice of change of address updating his address to Lee Correctional Institution [Doc. 62]. A prisoner's immediate custodian—the warden of the facility where the prisoner is being held—is the proper respondent in a habeas corpus action because the immediate custodian has the power to produce the prisoner's body before the habeas court. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). If a prisoner properly files a habeas petition naming the prison warden as the respondent and is relocated to another prison before the court decides whether or not to grant the petition, the court "retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id.* at 441 (discussing *Ex parte Endo*, 323 U.S. 283 (1944)). Thus, this Court retains jurisdiction over the Petition following Petitioner's transfer to Lee Correctional Institution.

[3] For this case, there are three Appendices—denoted in Respondent's brief as Appendix I, Appendix II, and Appendix III. Appendix I is composed of seven volumes, Appendix II is a single volume, and Appendix III is two volumes. However, the three Appendices were presented to this Court in five volumes, i.e., some of the separate volumes of an individual appendix were bound together, and some of the pages were out of order or submitted separately. Therefore, to avoid any confusion between the three Appendices, the Court refers to only the Docket Entry Number in this Report and Recommendation.

**Direct Appeal**

On April 28, 1995, Petitioner, through counsel, timely filed and served a notice of intent to appeal. [Doc. 50-2.] On May 20, 1996, Petitioner, represented by Loy, raised three issues in his appellate brief to the Supreme Court of South Carolina:

I.    Did the trial judge err in refusing the defendant's timely request for a charge on <u>adoptive</u> <u>admissions</u>?

II.   Was the trial judge's charge on reasonable doubt one which would allow a conviction based upon a lesser showing of guilt than that required by due process?

III.  Was the trial judge's failure to charge the lesser included offense of involuntary manslaughter in error?

[Doc. 50-3 at 4.] The Supreme Court affirmed Petitioner's convictions on December 20, 1996 [Doc. 50-5], and remittitur was issued on January 6, 1997 [Doc. 50-6].

**PCR Proceedings**

***First PCR Application***

Petitioner, through counsel John D. Crumrine ("Crumrine"), filed an application for post-conviction relief ("PCR") on December 19, 1997. [Doc. 48-5 at 49–59.] Petitioner raised the following grounds for relief:

(a)   Denial of Constitutional Right to Effective Assistance of Counsel under the 6th & 14th Amendment to the U.S. Constitution and under the S.C. Constitution, Article 1, Section 14.

(b)   Denial of Constitutional Right to Due Process under the 5th and 14th Amendment to the U.S. Constitution and under the S.C. Constitution, Article 1, Section 3.

[*Id.* at 50.] Specifically, Petitioner alleged his trial/appellate counsel and the trial court committed the following errors:

10. a.  <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

1.  <u>Trial Preparation</u>

(a) <u>Forensics</u>.

(1)  Jeffrey Youngren's attorney failed to adequately investigate, research and pursue scientific and forensic texts, publications and other resources in order to analyze the evidence and prepare for objections and cross examination of the State's witnesses.

(2)  Defense counsel failed to consult with and present expert witnesses as to forensics, including but not limited to:

i  Forensic pathologist;
ii  Blood splatter expert;
iii  Ballistics and firearm expert;
iv  Trace evidence expert.

(3)  Defense counsel failed to request and conduct a test firing of the 357 pistol at the hypothetical angle and distance argued by counsel.

(4)  Defense counsel failed to inspect and have examined forensic evidence and tests performed by the State, including, but not limited to, the scene of the death, photographs, x-rays, CAT scans, EMS records, ballistics tests and other scientific evidence.

(5)  Defense counsel erred in failing to have a client/attorney contract which set out what was reasonable for the costs of the case, such as expert witnesses.

(b)  <u>Witnesses</u>. Defense counsel failed to talk to and question all witnesses relevant to this case prior to trial, including, but not limited to Donna K , G K , C K, the funeral home personnel, EMS technicians and the medical examiner.

(c)  <u>Preliminary Hearing</u>. Defense counsel waived the preliminary hearing, foregoing a vital stage of gathering vital sworn testimony and an opportunity to have the case dismissed.

2.    <u>Errors at Trial</u>

(a)    Defense counsel failed to request a continuance in order to investigate and pursue the last-minute discovery information provided on the Friday before the Monday that the trial began, consisting of ballistic tests conducted on the 357 pistol. Defense counsel further failed to investigate and consult experts regarding the tests performed by the State. Defense counsel further failed, in the alternative of such motion for a continuance, to have moved for the exclusion of this evidence, due to its last minute nature and the inability of defense counsel to properly respond and investigate such evidence. In the trial, the critical evidence concerned the angle from which the fatal shot was fired and the distance of the gun at firing, refuting the defense theory of suicide.

(b)    Defense counsel failed to call any expert witnesses to counter the expert testimony of the State's witnesses.

(c)    Defense counsel failed to identify and call for trial any character witnesses for the defense.

(d)    Motions and Objections:

(1)    Defense counsel failed to object every time to the Court's charge on malice aforethought. The jury was charged three times on malice aforethought and twice returned to the Court for clarification. With this issue of such great importance to the jury, the Judge's charge that from the use of a gun "an implication of malice arises" was an especially prejudicial error. Defense counsel should have objected each time to this wording and asked for a curative charge, and post-trial, should have requested a new trial on this basis.

(2)    Defense counsel erred in stipulating to the State's Motion to preclude the defense from eliciting testimony that the shooting was accidental. Defense counsel stipulated that he would not elicit such testimony, and such testimony would have formed a basis for acquittal of murder or for a finding of involuntary manslaughter.

(3)    Defense counsel erred in refusing a jury charge on involuntary manslaughter and, further, grievously erred in failing to properly advise and insist that his 18-year

5

old client allow the issue of involuntary manslaughter to be submitted to the jury. Defense counsel further erred in failing to completely advise the Defendant on the effect of the sentence and parole eligibility under an involuntary manslaughter conviction.

(4)     Defense counsel further erred in failing to require the Court to properly put on the record a questioning of his client as to his waiver of Fifth Amendment rights before testifying, and his failing to advise him that the Court would charge the jury that his failure to testify could not be held against him.

(5)     Defense counsel erred in failing to timely object to and to exclude the hypothetical question posed by the· Solicitor to the ballistics expert, such hypothetical question not including all of the facts contained in the evidence presented at trial.

(6)     Defense counsel erred in failing to require the Court to rule on his objection to the prosecution's improper argument to the jury that their verdict must "send a message" to the community. Further, defense counsel failed to move for a mistrial based upon such argument and to request a curative charge, thereby failing to protect the record for appeal.

(7)     Defense counsel erred in failing to properly move with specificity post-trial for a mistrial based upon each of the previous errors of the Court and improper arguments of the Solicitor and, further in failing to make a motion for a new trial in the alternative. Defense counsel further failed to make a motion for a directed verdict or for a new trial based on the jury's verdict being unsupported by reasonable evidence, in that the evidence tended to prove, if anything, an involuntary manslaughter as a matter of law. The post-trial motion that was made was vague and did not protect the record for appeal.

(8)     Defense counsel erred in failing to object to the improper chain of custody for the items of evidence the State introduced at trial.

(9) Defense counsel failed to move for a competency determination for the children witnesses. Particularly, the youngest witness, who was only 10 years old at the time of her testimony. Defense counsel failed to effectively object and prohibit the leading questioning of these minor witnesses.

(10) Defense counsel failed to move to have the case re-opened, based on subsequent juror contact, reflecting an improper verdict.

3.    <u>Appellate Defense</u>.

(a) Defense counsel erred in failing to appeal the Judge's improper charge to the jury on malice aforethought.

(b) Trial counsel erred in failing to protect the record and appeal the Solicitor's improper arguments to the jury regarding "send a message".

4.    <u>Combination of Errors and Omissions</u>.

All of the above specified errors and omissions on the part of defense counsel combined together resulted in the ineffective assistance of counsel and deprived the Defendant of a fair trial and appeal.

10. b. <u>ERRORS OF THE COURT</u>

1.    The Trial Judge erred in allowing the prosecutor to argue to the jury that their verdict must "send a message" to the community. He failed to provide a curative charge to the jury or to call a mistrial for such actions.

2.    The Trial Court erred in charging the jury improperly on malice aforethought, indicating that the use of a deadly weapon "raised and implication" of malice.

3.    The Trial Court erred in failing to conduct a hearing on the Defendant's desire to take the witness stand and to properly determine a waiver of his Fifth Amendment rights and to assure that the Defendant was advised and knew that a failure to take the witness stand would not be held against him and that the jury would be so charged.

4.      Combination of Court's Errors.

All of the above specifications of errors of the Court, individually and in combination, worked to deprive the Defendant of the due process required of the State and Federal Constitutions, specified in Answer 9(b) above.

[*Id.* at 55–59.]   An evidentiary hearing was conducted on October 19–21, 1999 and December 20, 1999.  [*Id.* at 64–Doc. 49-4.]  On April 23, 2000, the PCR court issued an order denying and dismissing the application with prejudice.[4]  [Doc. 49-6 at 14–34.]

Petitioner filed a notice of appeal on June 14, 2000.  [Doc. 50-7.]  On Petitioner's behalf, Crumrine filed a petition for writ of certiorari in the South Carolina Supreme Court on July 9, 2001.  [Doc. 50-8.]  The petition presented the following questions:

I.      Did the PCR Judge err in finding that Trial Counsel provided effective assistance of counsel although he failed to advise the Applicant to not waive an involuntary manslaughter charge?

---

[4] The PCR court noted Petitioner elected to proceed primarily on the following issues, and the PCR court focused on these issues in its discussion:

1.      Failure to persuade the Applicant not to waive an involuntary manslaughter jury charge;

2.      Failure to pursue forensic aspects of the case and failure to adequately challenge the State's trial experts with the use of cross-examination, defense experts, and authoritative texts, particularly as to their interpretations of:

a.      Gunshot residue; and

b.      Gunshot distance determination;

3.      Failure to adequately object to Solicitor's "send a message" closing argument to the jury;

4.      Failure to object to the Court's jury charge on implied malice; and

5.      Combination of errors.

[Doc. 49-6 at 17.]

II.     Did the PCR Judge err in finding that Trial Counsel provided effective assistance of counsel despite his failure to investigate, prepare for and challenge the State's forensic evidence?

III.    Did the PCR Judge err in finding that Trial Counsel provided effective assistance of counsel despite his failure to preserve an objection to the Trial Judge's improper charge on implied malice, and if so preserved, in failing to appeal such charge given?

IV.     Did the PCR Judge err in finding that the Applicant received effective assistance of counsel despite Trial Counsel's failure to preserve an objection to the Prosecution's "send a message" argument, and if so preserved, in failing to appeal the Trial Judge's ruling?

V.      Did the PCR Judge err in failing to find that the combined effect of the above errors of Trial Counsel deprived the Applicant to his right to reasonable and effective representation?

[*Id.* at 3.]  On May 16, 2002, the Supreme Court denied the petition.  [Doc. 50-11.]

Remittitur was issued on June 3, 2002.  [Doc. 50-12.]

### Second PCR Application

Petitioner, proceeding pro se, filed a second PCR application on June 13, 2003.

[Doc. 50-15 at 3–7.] Petitioner alleged ineffective assistance of trial and appellate counsel

as his grounds for relief, as well as that his conviction was in violation of the federal and

state constitutions.  [*Id.* at 4.]  On January 10, 2005, an evidentiary hearing was held on

the application, and Petitioner was represented at the hearing by Henry R. Schlein.  [*Id.* at

13–21.]  On February 18, 2005, the PCR court filed an order denying and dismissing

Petitioner's application, finding the application was successive and untimely. [*Id.* at 22–26.]

On March 4, 2005, Petitioner timely filed and served a notice of appeal from the denial of his second PCR application. [Doc. 50-16.] On October 7, 2005, Wanda H. Carter ("Carter") of the South Carolina Office of Appellate Defense filed a *Johnson* petition[5] for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, arguing "[t]he PCR court erred in dismissing petitioner's defective indictment claim." [Doc. 50-17.] Subsequently, Petitioner filed a pro se brief raising the following arguments, quoted substantially verbatim:

1.  Was petitioner deprived of his right to have the jury reach its ultimate determination on the issue of guilt or innocence based on proper consideration of evidence produced at the trial?

2.  Was petitioner deprived of his right to have the jury reach its ultimate determination of guilt or innocence based on proper legal principles governing the facts of the case?

3.  Was petitioner prejudiced by the trial court permitting the state to pit his testimony against the states key witness testimony when credibility was the crucial issue in the case?

4.  Was petitioner prejudiced by the trial court instructing the jury they may infer malice with the use of a dead[ly] weapons?

[Doc. 50-18.] The case was transferred to the South Carolina Court of Appeals [Doc. 50-19], which denied the petition and granted Carter's request to withdraw on October 30, 2007 [Doc. 50-20]. Remittitur was issued on November 16, 2007. [Doc. 50-21.]

---

[5] A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief; a brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

### *Third PCR Application*

On February 13, 2007, while the appeal of his second PCR application was still pending, Petitioner filed a third PCR application, alleging newly discovered evidence as his ground for relief. [Doc. 53-2 at 18–24.] On February 14, 2008, the PCR court issued a conditional order of dismissal.[6] [*Id.* at 32–36.] On February 19, 2008, Petitioner, through attorneys Tommy A. Thomas and Tricia A. Blanchette, filed a response in opposition and an affidavit indicating a witness to the crime, who was a minor at the time of trial, had realized she had information that could be helpful to Petitioner—that she believed the shooting was accidental—and had contacted Petitioner. [*Id.* at 37–40.] Thereafter, the witness was deposed [*id.* at 41–59] and an evidentiary hearing was conducted before the PCR court [*id.* at 69–115].

On February 27, 2009, the PCR court filed an order denying and dismissing the application, finding the witness's testimony that the shooting was accidental was not newly discovered evidence and, in any event, did not warrant a new trial. [*Id.* at 116–24.] On March 5, 2009, Petitioner filed a motion for rehearing and/or Rule 59(e) motion to alter or amend. [*Id.* at 125–28.] The PCR court denied the motion by order filed March 27, 2009. [*Id.* at 129.]

Petitioner timely filed and served a notice of appeal. [Doc. 53-3.] On January 19, 2010, Kathrine H. Hudgins of the South Carolina Commission on Indigent Defense filed a petition for writ of certiorari with the Supreme Court of South Carolina on Petitioner's behalf. [Doc. 53-4.] The petition raised the following issue:

---

[6]The order in the record before this Court is undated and unsigned, but the response to the conditional order indicates the PCR court filed the conditional order on February 14, 2008. [Doc. 53-2 at 37.]

> Did the PCR judge err in refusing to find that testimony from a State's witness, obtained through deposition taken on July 22, 2008, indicating that the shooting was not intentional, constituted newly discovered evidence warranting a new trial?

[*Id.* at 3.] The Supreme Court denied the petition on June 23, 2011 [Doc. 53-6] and issued remittitur on July 11, 2011 [Doc. 53-7].

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on February 14, 2012, alleging the following grounds for relief, quoted substantially verbatim:

**Ground One**: Ineffective Assistance of trial counsel in failing to object to improper charge on implied/inferred malice and waiving involuntary charge

**Supporting Facts**: The Court's charge in describing implications of Malice tended to shift the burden of proof to the petitioner. The State could not prove malice, proof of Malice was wholly impossible, see "Memorandum of Law in Support of claim" of "Miscarriage of Justice" which Petitioner hearby repeats as if stated hereby verbatim. Trial Counsel testified at the P.C.R. hearing that he had no doubt that the jury would have convicted the Petitioner of Involuntary Manslaughter. On top of that, counsel testified at the PCR hearing that he heard the Jury arguing & saying that they ought to have some other choice, thought, this case ought to be (involuntary) manslaughter. <u>Moreover</u>, the Coroner's Jury returned a recommendation for prosecution as Involuntary Manslaughter.

Trial counsel, the Jury, & the coroner all agreed that "this (case) ought to be (involuntary) manslaughter." Nothing in the record contradicts &/or makes even the slightest attempt to, THEREFORE, IT IS THE LAW & UNDISPUTED FACTS OF THE CASE.

Trial counsel was clearly & undisputably ineffective for failing to properly object to point out that the inference of malice from the use of a weapon is contradicted by the evidence, shifts the burden of proof

- a burden the state could not carry, & improperly implies that was not present in the case.

MOREOVER, counsel waived the involuntary manslaughter charge but later at PCR joins the majority. THEREFORE, by counsel's own admission at PCR he is ineffective - prejudice is Petitioner has a life sentence for murder as opposed to a maximum seven years for involuntary manslaughter & he would of been home years ago.

**Ground Two**: The jury instructions were fundamentally unfair where there was insufficient evidence to sustain jury's verdict to Murder.

**Supporting Facts**: The State could not prove Murder where evidence was insufficient to prove malice. See "Memorandum of law in support of claim" of "Miscarriage of Justice" which Petitioner hereby repeats as if repeated herein verbatim. Malice is an ill-will, a mind set. The best evidence of the State of Mind attending any act is what was said and done by the person whose motive is sought. The record is void of any intent to take a life. Only forced "Malice Facts" from the use of a deadly weapon.

**Ground Three**: Newly Discovered Evidence, Brady Violation, Prosecutorial Misconduct and Due Process violation.

**Supporting Facts**: During a telephone de[]position taken on July 22, 2008 trial eyewitness Ms. Jeanna Oros testified, "I believe at the meeting prior to trial Mr. Bailey (solicitor) said, something about Murder. And I kinda of turned to my Mom and said, but it was an accident. And Mr. Bailey said, well that doesn't matter and I guess because we can't give our opinions on the stand." This is newly discovered evidence because the admission by Ms. Oros would undisputably have changed the outcome where, as already established, trial counsel testified at the PCR hearing that he had no doubt that the Jury would have convicted the Petitioner of Involuntary Manslaughter. On top of that, counsel testified at the PCR hearing that he heard the Jury arguing & saying they ought to have some other choice, thought, this (case) ought to be (involuntary) manslaughter.

MOREOVER, the Coroner's Jury returned a recommendation for prosecution as Involuntary Manslaughter.

This has been discovered since trial & could not by the exercise of due diligence have been discovered before the trial, because the solicitor did engage in prosecutorial misconduct by telling Ms. Oros that it does not matter she seen the incident as being an accident. The solicitor knew that he had no evidence to prove malice except burden shifting jury instruction that malice could be inferred from the use of a deadly weapon, & intentionally lied to Mr. Oros as a tactic. The solicitor knew that Mr. Oros testimony would of supported the Coroner's Jury return recommendation for prosecution as Involuntary Manslaughter, thus being undisputably material to the issue of guilt or innocence & is not merely cumulative or impeaching. As stated this was an eye witness, the Jury seeing the incident through the eyes of Mr. Oros as she saw it an involuntary Manslaughter verdict was imminent. FURTHERMORE, no reasonable attorney would have waived involuntary manslaughter instruction if they had known Mr. Oros would have testified to such.

Due process was violated for numerous reason, the solicitor telling Mr. Oros that it does not matter that she seen the incident as being an accident, where it prohibited trial counsel from presenting a complete defense, thus making counsel ineffective, depriving Petitioner of right to a fair trial & confront witnesses against him. Thus a clear violation of <u>Brady</u>, where no reasonable minded Attorney General could dispute that if Ms. Oros would testified to it being an accident the result of the proceeding would have been different.

[Doc. 1 at 5–9.] Petitioner also submitted a memorandum of law, asserting (1) the statute of limitations is inapplicable and/or tolled because he is actually and factually innocent of murder and (2) the "miscarriage of justice exception" provides an opportunity for reviewing his claims of error that implicate his actual innocence or that would affect the accuracy of the guilty verdict. [Doc. 1-1.]

As stated, on August 3, 2012, Respondent filed a motion for summary judgment. [Doc. 47.] On October 11, 2012, Petitioner filed a response in opposition. [Doc. 66.] Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp*., 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

> ***Generally***

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

***Procedural Bar***

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)  (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)  (I) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[7] Further, strict time deadlines govern direct appeal and the filing

---

[7]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.[8]

### *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state

---

at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[8] In *State v. McKennedy*, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies."  559 S.E.2d 850, 854 (S.C. 2002) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533

(quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating

to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

### Statute of Limitations

Under the AEDPA, petitioners have one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D).  However, the statute tolls the limitations period during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the application is untimely under state law.  *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002) (alteration in original)).  In *Pace*, the United States Supreme Court held that time limits on filing applications for post-conviction or collateral review are filing conditions, no matter the form of the time limit.  *Id.* at 417.  Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition.  *Holland v. Florida*, --- U.S. ---,130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418).  Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied.  *Id.* at 2563.

## DISCUSSION

Respondent contends the Petition is time-barred and that Petitioner is not entitled to equitable tolling.  [Doc. 48 at 41–48.]  Petitioner contends the statute of limitations is not applicable and/or is tolled because he has demonstrated that he is actually and factually

innocent of murder.  [Doc. 1 at 16; Doc. 1-1.]  The Court agrees with Respondent that the Petition is untimely and that Petitioner is not entitled to equitable tolling.

**Expiration of Limitations Period**

The South Carolina Supreme Court affirmed Petitioner's conviction on December 20, 1996.  [Doc. 50-5.]  Consequently, Petitioner had one year from March 20, 1997—when time expired for Petitioner to seek further direct review—to file a federal habeas petition. 28 U.S.C. § 2244(d)(1); Sup. Ct. R. 13.1 (stating a petition for writ of certiorari seeking review by the United States Supreme Court must be filed with the Clerk of Court for the Supreme Court within 90 days after entry of the judgment by the state court of last resort); *Gonzalez v. Thaler*, --- U.S. ---, 132 S. Ct. 641, 653–54 (2012) (holding that a judgment becomes final for purposes of § 2244(d)(1) "when the time for pursuing direct review in [the United States Supreme] Court, or in state court, expires"); *Holland*, 130 S. Ct. at 2558.

Petitioner filed his first PCR application on December 19, 1997 [Doc. 48-5 at 49–59], such that 274 days of the one-year limitations period had expired before Petitioner filed his PCR application.  The one-year period in which to file a federal habeas petition is tolled during the pendency of a properly filed PCR application, 28 U.S.C. § 2244(d)(2), and thus, the statute of limitations was tolled during the period Petitioner's first PCR application was pending—from December 19, 1997 to June 3, 2002, when the South Carolina Supreme Court issued remittitur following the denial of Petitioner's petition for writ of certiorari [Doc.

50-12]. Therefore, the AEDPA limitations period began to run again on June 3, 2002 and expired 91 days later on September 3, 2002.[9]

Petitioner filed a second PCR application on June 13, 2003 [Doc. 50-15 at 3–7], well after the limitations period expired. Further, the PCR court determined the second PCR application was untimely and successive. [*Id.* at 22–26.] Petitioner filed a third PCR application on February 13, 2007 [Doc. 53-2 at 18–24], also outside of the limitations period, which the PCR court denied because it failed to present a basis for relief [*id.* at 116–24]. Moreover, the South Carolina Supreme Court and Court of Appeals dismissed Petitioner's appeals of the denial of these applications. [Docs. 50-20, 53-6.] Therefore, because the second and third PCR applications were filed outside the AEDPA limitations period and the South Carolina courts determined these applications were not properly filed, Petitioner's second and third PCR applications did not additionally toll the one-year AEDPA limitations period. As a result, the Petition—filed on February 14, 2012, more than nine years after the expiration of the limitations period—is time-barred.[10]

---

[9] Pursuant to Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, when calculating time, the last day of the period must be included, "but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Because the AEDPA limitations period expired on Monday, September 2, 2002—the Labor Day holiday—Petitioner had until Tuesday, September 3, 2002 to timely file a federal petition for writ of habeas corpus.

[10] Petitioner argues the statute of limitations is inapplicable because without review of the Petition, he would suffer a miscarriage of justice. [*See* Doc. 1-1.] Petitioner also argues he discovered new evidence—that an eyewitness came forward and stated she believed the shooting was accidental. [Doc. 1 at 9–10.] Liberally construing Petitioner's argument, Petitioner contends his claims are subject to 28 U.S.C. § 2244(d)(1)(D), which states that, if this date is the latest, the AEDPA one-year statute of limitations runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Thus, the Court liberally construes Petitioner's argument to contend the statute of limitations began to run when he discovered this witness's testimony and was tolled during the time his third PCR application, in which he raised his claim of newly discovered evidence, was pending. The Court disagrees; Petitioner has failed to present facts to support his claim that the witness's testimony was newly discovered evidence. Rather, the record indicates that at the time of trial, Petitioner's trial counsel likely knew of or would at least attempt to elicit opinion testimony on whether the shooting was accidental from any testifying eyewitnesses, but the trial court granted the State's motion in limine to prevent the defense from

**Equitable Tolling**

Petitioner argues the statute of limitations is tolled because he has demonstrated that he is actually and factually innocent of murder. [Doc. 1 at 16; Doc. 1-1.] Respondent contends Petitioner cannot demonstrate that he is entitled to equitable tolling because he cannot show (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in his way, which prevented him from timely filing. [Doc. 48 at 45–48.]

As the United States Supreme Court has recognized:

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S. Ct. 1723, 1725, 80 L. Ed. 2d 196 (1984).

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92, 96 (1990) (footnotes omitted). The United States Court of Appeals for the Fourth Circuit has underscored the very limited circumstances in cases subject to the AEDPA where equitable tolling will be permitted, holding a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en

---

eliciting such opinion testimony. [Doc. 48-1 at 66–67; *see also* Doc. 53-2 at 99 (testifying at the third PCR hearing, Petitioner's trial counsel stated that, because of the length of time since the trial, he could not specifically recall whether he knew of the witness's testimony that the shooting was accidental but based on his experience with the solicitor handling Petitioner's trial, if the solicitor made the motion in limine, Petitioner's trial counsel was likely aware of the witness's opinion that the shooting was accidental).] Therefore, Petitioner has failed to establish that § 2244(d)(1)(D) applies, and therefore, the Court concludes the AEDPA statute of limitations applies and began to run when Petitioner's judgment became final on March 20, 1997.

banc).  Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris*, 209 F.3d at 330.[11]  The Supreme Court has suggested that equitable tolling is justified to relieve the operation of a limitations bar due to egregious unprofessional attorney misconduct, such as abandoning the client; a last minute change in representation beyond the client's control; failing to conduct essential services of representation like communicating with the client and performing basic legal research; and denying the client access to files and misleading the client.  *Holland*, 130 S. Ct. at 2564 (citations omitted). Further, as previously stated, the Supreme Court has held that in addition to demonstrating extraordinary circumstances prevented the petitioner from timely filing, the petitioner must demonstrate he has been diligently pursuing his rights.  *Id.* at 2562.

---

[11] Other courts of appeals have similarly expressed that equitable tolling of the AEDPA statute of limitations is to be employed sparingly. *See, e.g.*, *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) (applying the general rule that "'attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling'" (citation omitted)); *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002) ("Ineffective assistance of counsel generally does not warrant equitable tolling"); *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) ( "[C]ounsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [the petitioner's] habeas petition in the district court within the one-year limitations period"); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (refusing to apply equitable tolling where late filing was caused by attorney's use of ordinary mail to send petition from Atlanta to Miami less than a week before it was due); *see also Rouse*, 339 F.3d at 246 ("Principles of equitable tolling do not extend to garden variety claims of excusable neglect" (citation omitted)).

Further, in the context of a petition time-barred under § 2244(d), the Court has doubts as to whether actual innocence provides grounds for equitable tolling or serves as an exception to the statute of limitations. While "[t]he Fourth Circuit has not expressly ruled that 'actual innocence' is an exception that permits equitable tolling[,] . . . other circuits have reasonably concluded that there is no such exception." *DiCaprio–Cuozzo v. Johnson*, 744 F. Supp. 2d 548, 559 (E.D. Va. 2010) (collecting cases that hold no actual innocence exception to the statute of limitations exists). On this basis, the Court concludes Petitioner's claim of actual innocence is not sufficient to overcome the application of the AEDPA one-year statute of limitations.

Moreover, the Court notes the United States Supreme Court has not recognized a freestanding actual innocence claim based on newly discovered evidence as a cognizable claim for federal habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Thus, even if the Court considered the merits of the Petition and Petitioner's claim based on new evidence, Petitioner would not have a cognizable claim for federal habeas relief. Therefore, the Court recommends Respondent's motion for summary judgment be granted and the Petition be dismissed as untimely.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

October 30, 2012
Greenville, South Carolina